## JACKSON VS. THE TOWN OF BELLEVIEU.

PRACTICE.  *Bill of exceptions; practice where bill is signed before judgment roll is returned; practice where signed afterward.*

HIGHWAYS.  *Injuries from defective highway; runaway horse; duty of town.*

NON-SUIT.  *When granted.*

1. A bill of exceptions duly signed and filed in the court below, is a part of the record, whether or not it has been annexed to, and so made part of the judgment roll.

2. Where the bill of exceptions is signed and filed *before* the judgment roll is returned to this court, on appeal, the clerk of the circuit court is required to annex it to the judgment roll, and it is thenceforth a part thereof, and the whole roll, thus constituted, is returned to this court authenticated by a single certificate of the clerk of the lower court and by the seal thereof. 2 Taylor's Stats. 1637, § 13, and 1632, § 5.

3. But where such bill has been signed and filed *after* appeal taken and a return made, it is permitted by the settled practice of this court either (1) to have the record withdrawn from the files, on motion, to be completed by the annexation of the bill of exceptions thereto; or (2) to have such bill of exceptions sent up by the clerk of the court below (without any motion) as a supplemental return, verified by a separate certificate.

4. Where injuries to a horse and vehicle occur at a point in a highway where it is defective, the owner cannot recover if the horse was in a

condition of flight, and uncontrollable, such condition not being caused by any defect in the highway, and it appearing that if the horse had been controlled and driven with ordinary care and skill, the injury might not have happened. *Houfe v. The Town of Fulton* and *Kelly v. The Town of Fond du Lac*, followed.

5. It is not the duty of towns to provide roads which shall be safe for unmanageable or runaway horses, or horses which have escaped from the control of their drivers without fault of the town, and injuries sustained under such circumstances, it appearing that otherwise they might not have been sustained, must be borne by the owners.

6. A motion for a non-suit made after defendant's evidence is in should be granted if there is no evidence that would sustain a verdict for the plaintiff.

APPEAL from the Circuit Court for *Brown* County.

Action to recover damages for the loss of a horse alleged to have been caused by reason of defective highway. The complaint alleged that for more than two months prior to the injury to the horse in question, a public highway in the *Town of Bellevieu* had been out of repair, numerous gullies and dangerous holes having been washed out and left unprotected, and without notice to travelers; that by reason of such defective highway and the negligence and fault of the town of Bellevieu, plaintiff's horse was precipitated into a gully or hole in said highway, which had been partially filled with brush, thereby rendering it more dangerous and insecure, and that from the injuries thus sustained, the horse afterwards died. The answer admitted the existence of the highway, but denied that it was the duty of the town to keep the same in repair, and traversed generally all the allegations of the complaint.

It appeared in evidence, that plaintiff's horse was being driven in a field near the road, and that she was attached to a wagon under charge of two men engaged in hauling sods; that while under charge of these men she became suddenly frightened, the evidence tending to show that the fright was caused by the smell of blood from a slaughter house in the direction of which the horse was being driven, and that she became unmanageable and ran with the driver, the wagon striking against a tree and break-

ing the shafts, the driver being unable to control the horse; that after clearing herself from the debris of the wagon and escaping the driver, the horse ran unchecked back through the first field and through another intervening between that and the highway, and in running along the highway fell into a deep hole or gully adjacent to the road and partially filled with stumps, brush and logs, there being no barrier or protection at that point of the road, which was about twenty-eight feet in width, and that from the injuries thus sustained, the horse soon afterward died.

After the close of the testimony upon both sides, counsel for defendant moved for a non-suit, upon the ground that from plaintiff's own testimony he was not entitled to recover, because the accident was caused by his own negligence, which motion was overruled. Verdict being rendered for plaintiff in the sum of $175.00, and a motion for a new trial being overruled, judgment was rendered upon the verdict and defendant appealed.

*Graves & Billings*, for appellant, contended that the town should not be held liable, because the fright, escape and running away of the horse were the primary cause of the accident, over which the town had no control, and to this point cited, *Davis v. Inhabitants of Dudley*, 4 Allen, 557; *Marble v. City of Worcester*, 4 Gray, 395; *Rowell v. Lowell*, 7 Gray, 100; *Kidder v. Inhabitants of Dunstable*, 7 Gray, 104; *Moore v. Abbott*, 32 Maine, 46; *Coons v. Inhabitants of Topsham*, 38 Maine, 204; *Anderson v. City of Bath*, 42 Maine, 348; *May v. Nahant*, 96 Mass., 578; *Titus v. Inhabitants of Northbridge*, 97 Mass., 258. Travelers are to use due diligence, and towns are to keep the highways in such condition that travelers using such care, may go safely. In this case, when the horse escaped from its driver and ran out of the lot, in and upon the highway, it cannot be said the driver used due and proper care or any care whatever, therefore he was not using or exercising that degree of care which the law makes essential to the right of recovery. *Smith v. Smith*, 2 Pick, 622; *Butterfield v. Forrester*, 11 East, 60; *Nicks v. The*

*Town of Marshall*, 24 Wis., 139. To the point that the court erred in denying defendant's motion for a non-suit, counsel contended, that where the uncontroverted facts showed a want of proper care on the part of plaintiff, it had been frequently held as a conclusion of law, that there was no legal cause of action, and cited *Todd v. Old Colony R. R.*, 3 Allen, 18; *Haring v. New York and Erie R. R.*, 13 Barb., 9; *Swift v. Newbury*, 36 Vt., 355; *Parks v. Ross*, 11 How., 373; *Cotton v. Wood*, 98 Eng. Com. Law R., 568.

*Hudd & Wigman*, for respondent, argued that the bill of exceptions having been settled after the taking of the appeal, did not constitute any part of the record, and that the court could only review the case upon the pleadings. The appellant appealed from the record as it stood at the time of the appeal, and not from things to come, and after appeal taken and after the record was already in the Supreme Court, the circuit judge could not properly sign the bill of exceptions. *Blossom v. Ferguson*, 13 Wis., 75; *Walker v. Rogan*, 1 Wis., 597; *Meade v. Walker*, 20 Wis., 518; *Vroman v. Dewey*, 22 Wis., 360; *Newcomb v. Town of Trempeleau*, 24 Wis., 460; Laws of 1860, chap. 264, sec. 12. But considering the case upon the bill of exceptions, the motion for a non-suit was properly denied. To bar a recovery, plaintiff must be guilty of negligence, and that negligence must contribute to the injury. *Haley v. Earle*, 30 N. Y., 208. Unless plaintiff contributed to the injury by want of ordinary care, he was entitled to recover. Even though the horse took fright and such fright contributed to the accident, the town would still be liable if the jury found that the accident would not have occurred except for a defect in the highway. *Dreher v. Town of Fitchburg*, 22 Wis., 675.

DIXON, C. J. Counsel for the plaintiff object that the bill of exceptions in this case was not settled until after the appeal was perfected and a return made to this court, and hence, that there is nothing before this court for review except the case as

presented on the pleadings. The facts appearing from the record and papers returned, are that the appeal was perfected on or before the 12th day of March, on which day the clerk of the court below transmitted to this court, with his certificate in due form annexed, the summons, complaint, answer, written instructions of the court, verdict, motion for a new trial, judgment, cost bill, notice of appeal, and the undertaking. These papers were received by the clerk and filed in this court on the 16th of March. On the 20th day of the same month the bill of exceptions was settled and signed by the judge of the court below, and on the 23d, the same, with the proper certificate of the clerk annexed, was returned by the clerk of that court to the clerk of this, and was received and filed here March 26th. The papers first returned with the certificate of the clerk annexed thereto, and the bill of exceptions with its separate certificate, now appear upon the files of this court as separate documents or returns constituting the record in the action sent up in pursuance of the appeal taken by the defendant. They are not joined together or annexed so as to constitute a single return or roll, with a single certificate of the clerk of the circuit court appended, as is the more usual practice on appeals to this court.

The regularity and correctness of a bill of exceptions, settled and signed after appeal taken in the case, has long been established by the decisions and practice of this court. Reported cases to this effect may not be found, but the point has been presented in various ways, and has been frequently decided. It has sometimes arisen upon application to this court for leave to withdraw the record or return, for the purpose of having the bill of exceptions (settled after the appeal was taken) annexed by the clerk of the court below, and the record then again sent back to this court. It has sometimes arisen upon motion to strike out a bill of exceptions which was so settled, and sometimes upon motion for leave to have the bill re-settled and re-signed, where mistakes and irregularities had intervened, or where otherwise it became important to have the bill amended

Jackson vs. The Town of Bellevieu.

or corrected in some particular or particulars. In these and all like cases, which have been quite numerous, the regularity of bills of exceptions, settled and signed after appeals taken in the causes to which they belong, has been constantly recognized by this court. As to the origin or foundation of the practice, it seems hardly necessary to inquire. It has prevailed from the first organization of the court, and probably as one of the inherent powers of the court, unless expressly taken away or prohibited, to allow amendments and do other acts in furtherance of justice. See *Tollensen v. Gunderson*, 1 Wis., 110. It is a useful and beneficial power, and as the power to allow a bill of exceptions to be amended or re-settled or re-signed after the appeal has been perfected, includes the power to accept a bill which has been settled and signed after appeal, there being no other objection, the practice has always been to receive such bills and to act upon them the same as if settled and signed before the appeal was taken. In such case the course has sometimes been, and perhaps the better course, for the appellant to ask and obtain leave to withdraw the record, and have the bill of exceptions annexed as part of the original return, which is then restored to the files of this court, in pursuance of the order. See *Vroman v. Dewey*, 22 Wis., 360.

But upon inquiry made of the clerk, we find that such has not been invariably the course pursued. On the contrary, in many, and probably most such cases, the practice has been that which was here pursued. The bill of exceptions duly authenticated by the certificate of the clerk, under his hand and the seal of the court, has been transmitted as a second or supplementary return, and so has been regarded as properly here by experienced counsel, and no objection being taken, it has been so looked upon and treated by the court. There has been quite a number of such cases in the last few years, especially from the second and ninth circuits, where the practice has become quite familiar. And it seems to have been found convenient for counsel and suitors, and we see nothing improper or wrong in

it. It is of the nature of a supplemental return that it should come up as a separate document, or part of the record, and be separately certified or authenticatedi by the clerk. *Noonan v. Orton*, 29 Wis., (decided Oct. 9, 1871). The substantial requirement in this court is, that the bill of exceptions shall be so signed and authenticated that the court may certainly know that it contains the testimony taken in the case and used upon the trial. *Riker v. Scofield*, 6 Wis., 367. " A bill of exceptions once signed by the judge, and filed, becomes a part of the record, and so remains for all purposes. And the same is true, though there may be several of them in the course of proceedings in a cause." *Mead v. Walker*, 20 Wis., 519. A bill of exceptions signed and filed in the court below is, therefore, a part of the record, regardless of whether it has been annexed to the judgment roll so as to be deemed a part thereof or not. Where a bill of exceptions is signed and filed before return made to an appeal, the clerk is required to annex the same to the judgment roll, and it thenceforth becomes a part thereof. 2 Tay. Sts., 1637, § 13. And upon transmission of the judgment roll to this court on appeal, the bill of exceptions of course continues to be a part of it. 2 Tay. Sts., 1632, § 5. But where the bill of exceptions has been settled and filed after an appeal has been taken and a return made, which it is nowhere declared shall not be done, in that case annexation to the judgment roll becomes impossible, unless a diminution of the record is alleged in this court, and permission granted to withdraw it so that it may be returned to the court below, and there perfected by annexation of the bill. Another course is, as already indicated, to transmit the bill to this court properly certified. The cases in this court where appeals have been dismissed for want of proper returns, or where the court has refused to consider the testimony, were, as will be seen, where the papers were in no manner properly authenticated. *Best v. Young*, 6 Wis., 67. *Shewey v. Manning*, 14 Wis., 448. *Rikard v. Schofield, supra.* In no case yet has the court refused to consider a

bill of exceptions, because it was separately returned or separately filed, provided it was properly settled and signed and duly authenticated by the certificate of the clerk. We think we must examine and consider the bill of exceptions in this case.

Upon the merits the case presents no new or difficult question. It appears from the testimony introduced by the plaintiff, and as to which there is no doubt or conflict, that the horse for the loss of which the plaintiff sues, was being driven in a field some distance from the highway, attached to a wagon, in charge of persons who were engaged in cutting and hauling turf, when she became suddenly frightened from some cause, probably the smell of blood from a slaughter-house near by, and becoming unmanageable, ran with the driver, the wagon striking against a tree, where the shafts were broken, and the horse clearing herself from the wagon and the driver, ran away uncontrolled and alone from that field, and thence through another into the highway, in passing along which in her flight, she plunged into a ravine or deep gully, filled with tree tops, logs and stumps, upon one side of and near to the traveled track, and at a point where it is claimed the highway was insufficient for want of a railing or barrier to prevent teams and travelers from being driven or running off and causing injury. The horse died in a few days from the injuries thus sustained. Upon these facts it is clear to the minds of this court that there is no liability for the loss on the part of the town. A sufficient understanding of our views of the law in such a case, will be obtained by a perusal of the opinions of the court in *Houfe v. The Town of Fulton,* 29 Wis., and *Kelley v. The Town of Fond du Lac,* 29 Wis. The escape and flight of the horse in this case was in no way connected with or attributable to any defect or insufficiency in the highway, and conceding the same to have been defective at the point of injury, still the town is not liable, because the owner or driver was in no situation to exercise ordinary care

or prudence to prevent the injury at the time it happened, which proof is in all cases necessary in order to charge the town, unless the situation or disability of the driver in this respect is caused by the same or some other defect in the highway.

Cases of the latter description should, as it has seemed to this court, constitute an exception to the rule requiring proof of ordinary care at the time of accident, because the want of such care or the inability of the party to exercise it, is clearly the fault of the town, which should not be permitted to take advantage of its own wrong. But where the flight and uncontrollableness of the horses proceed from no neglect of duty on the part of the town, then, though there may be no fault in that regard on the part of the driver or person in charge of the team, still there can be no recovery against the town, because no proof of ordinarily careful and skillful driving, so as, if possible, by that means, to have prevented the injury, can be made. In such case, it is the misfortune of the owner and not the fault of the town that he is unable to make such proof, and he alone must bear the loss. In such case, the proof being that if the team had been under the control of the driver and properly managed or driven with ordinary care and prudence, it might have passed with safety, then the defect in the highway, if shown to have been defective, is not regarded as the cause of the injury. The flight and unmanageableness of the horses is looked upon as having been the primary and efficient cause of it, and the courts will not stop to consider how far, if at all, the negligence of the town may have contributed towards it, but the town is deemed blameless, or so much so that an action will not lie against it. It is not the duty of towns to provide roads which shall be safe for runaway or unmanageable horses, or such as have escaped from control of their drivers without the fault of the towns, and where injuries are sustained under such circumstances, it appearing that otherwise they might not have been sustained, the loss must fall upon the owners whose misfortune, if not whose fault, it is that they so happened. Such

were the facts of the case before us. The road at the point of accident might, with ordinarily careful driving, have been passed with safety. It had been so passed with this very horse and wagon several times before on the same day. The proof is that the traveled track, smooth and suitable for the passage of teams, was from 26 to 28 feet wide at the very place of injury, and that it was 44 feet from the brink of the hill or edge of the gully, to the fence on the opposite side of the highway.

Several of the authorites in support of this conclusion, are referred to in *Houfe v. The Town of Fulton*, and others will be found in the brief of counsel for the present defendant. We know of none of a contrary tendency, or which sanction a different doctrine.

It follows from these views, that the motion for a non-suit made at the close of the testimony should have been granted. It is not common perhaps to move for or for the court to direct a non-suit after the evidence in behalf of the defendant is in, but it is well settled that such practice is proper. *Cutter v. Hurlbut*, 29 Wis., and the authorities there cited. If such motion had been made when the plaintiff rested his case, it should have been granted, and it was proper and ought to have been granted at the time it was made. It also follows from the same views that the special instruction asked by the counsel for the defendant, should under the circumstances have been granted.

*By the Court.*— Judgment reversed, and cause remanded with directions that it be dismissed.